AG:MFS
F.#2008R00908

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

　　- against -

CHRISTOPHER PEARCE and
ALISON PINES,

　　　　　　　　Defendants.

- - - - - - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
542, 981(a)(1)(C),
982(a)(2)(B), 1343,
1349, 2 and 3551
et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

　　At all times relevant to this Indictment, unless otherwise indicated:

　　1.　Defendant CHRISTOPHER PEARCE was the principal owner of, and possessed a controlling interest in, Extreme Logistics, Inc. ("Extreme Logistics"), a freight forwarding and customs brokerage business located in Valley Stream, New York.

　　2.　Defendant ALISON PINES was defendant CHRISTOPHER PEARCE's assistant at Extreme Logistics.

　　3.　A logistics-related services company located in Wakefield, Massachusetts, the identity of which is known to the Grand Jury (the "Client Corporation"), provided its customers, among other services, with international and domestic freight forwarding and customs brokerage services.

4. From August 7, 2000 to October 31, 2005, the Client Corporation contracted with defendant CHRISTOPHER PEARCE for PEARCE to conduct freight forwarding and customs brokerage services on the Client Corporation's behalf and in its name in the New York metropolitan area. Through his business, Extreme Logistics, defendant CHRISTOPHER PEARCE agreed to act as a freight forwarder and a licensed customs broker on behalf of the Client Corporation's customers who were engaged in the business of importing merchandise into the United States. Defendant ALISON PINES frequently communicated and conducted business with the Client Corporation's customers on behalf of defendant CHRISTOPHER PEARCE and Extreme Logistics.

5. Customer #1, Customer #2, Customer #3, Customer #4, Customer #5 and Customer #6, companies whose identities are known to the Grand Jury (collectively, the "Client Corporation Customers"), were customers of the Client Corporation that relied on Extreme Logistics to provide them with freight forwarding and customs brokerage services for merchandise imported into the United States.

6. As a freight forwarder, Extreme Logistics was responsible for acting as an intermediary between shippers and consignees of cargo, the individuals to whom the freight was destined for delivery. The freight forwarding services provided by Extreme Logistics to its clients, including the Client

Corporation Customers, included, among other services, filing applications with the United States Customs Service ("Customs") and its successor, United States Customs and Border Protection ("CBP"), for the movement of shipments from ports of entry into the United States, as well as arranging for the subsequent transportation of those shipments.

7. As a customs broker, Extreme Logistics was responsible for acting as an intermediary between its clients, including the Client Corporation Customers, and Customs and CBP. The customs broker services provided by Extreme Logistics to its clients, including the Client Corporation Customers, included, among other services: the preparation and submission of documents and electronic filings to Customs and CBP in connection with the entry of merchandise into the United States; the calculation, collection and payment of various duties and fees due and owing to Customs and CBP; and communication with Customs and CBP.

8. In connection with the customs brokerage services provided by Extreme Logistics to the Client Corporation Customers, among other things, defendants CHRISTOPHER PEARCE and ALISON PINES were responsible for inputting accurate information about the merchandise of the Client Corporation Customers into the Automated Broker Interface ("ABI") operated by Customs and CBP. Defendants CHRISTOPHER PEARCE and ALISON PINES were also responsible for collecting the appropriate duties and fees from

the Client Corporation Customers for that merchandise and remitting those duties and fees to Customs and CBP.

9.   On or about and between January 13, 2003 and October 31, 2005, in connection with the customs brokerage services provided by Extreme Logistics to the Client Corporation Customers, defendants CHRISTOPHER PEARCE and ALISON PINES submitted and caused to be submitted invoices to the Client Corporation Customers billing them for approximately $1.9 million in duties and fees due and owing to Customs and CBP on merchandise imported by the Client Corporation Customers into the United States.

10.   On or about and between January 13, 2003 and October 31, 2005, the Client Corporation Customers paid approximately $1.9 million (the "Proceeds") to defendants CHRISTOPHER PEARCE and ALISON PINES with the expectation that defendants CHRISTOPHER PEARCE and ALISON PINES would remit the entirety of the Proceeds to Customs or CBP to pay duties and fees due and owing to Customs and CBP. Defendants CHRISTOPHER PEARCE and ALISON PINES deposited the Proceeds into an Extreme Logistics bank account at JPMorgan Chase bank.

11.   On or about and between January 13, 2003 and October 31, 2005, instead of paying the full amount of the Proceeds to Customs and CBP, defendants CHRISTOPHER PEARCE and ALISON PINES submitted and caused to be submitted to Customs and

CBP customs entries and forms that deliberately and falsely underestimated the duties and fees due and owing to Customs and CBP and remitted only approximately $300,000 of the Proceeds to Customs and CBP. The remaining portion of the Proceeds, which the Client Corporation Customers had relied on defendants CHRISTOPHER PEARCE and ALISON PINES to remit to Customs and CBP, was instead converted by defendants CHRISTOPHER PEARCE and ALISON PINES to their own personal use.

12. On or about and between January 13, 2003 and October 31, 2005, defendants CHRISTOPHER PEARCE and ALISON PINES transferred approximately $1.6 million of the Proceeds from the Extreme Logistics bank account to defendant CHRISTOPHER PEARCE to operate Extreme Logistics, make mortgage payments on personal properties and pay personal expenses, and to defendant ALISON PINES to make mortgage payments on personal property and pay personal expenses.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

13. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. On or about and between January 13, 2003 and October 31, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTOPHER PEARCE and ALISON PINES, together with

others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Client Corporation Customers, Customs and CBP, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH FIVE
(Wire Fraud)

15.  The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

16.  On or about and between January 13, 2003 and October 31, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTOPHER PEARCE and ALISON PINES, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Client Corporation Customers, Customs and CBP, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and

6

artifice, did transmit and cause to be transmitted one or more writings, signs, signals, pictures and sounds by means of wire communication in interstate and foreign commerce, as set forth below:

| Count | Approx. Date | Description |
|---|---|---|
| TWO | July 12, 2005 | Email sent from the Extreme Logistics office in Valley Stream, New York to Customer #1 in the Philippines. |
| THREE | Aug. 25, 2005 | Electronic submission of customs entries via the ABI from the Extreme Logistics office in Valley Stream, New York to CBP in Virginia. |
| FOUR | Sept. 28, 2005 | Electronic submission of customs entries via the ABI from the Extreme Logistics office in Valley Stream, New York to CBP in Virginia. |
| FIVE | Oct. 7, 2005 | Email sent from the Extreme Logistics office in Valley Stream, New York to Customer #1 in the Philippines. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT SIX
(Conspiracy to Commit Customs Fraud)

17.   The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

18.   On or about and between January 13, 2003 and October 31, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTOPHER PEARCE and ALISON PINES, together with

7

others, did knowingly and intentionally conspire to commit one or more willful acts and omissions, to wit: the willful submission of materially fraudulent and false Customs declarations, papers and statements, declaring duties on imported merchandise substantially lower than those that were due and owing to Customs and CBP, whereby the United States was deprived of lawful duties accruing upon merchandise referred to in such declarations, papers and statements, and affected by such acts and omissions, in violation of Title 18, United States Code, Section 542.

19. In furtherance of the conspiracy and to effect its objectives, the defendants CHRISTOPHER PEARCE and ALISON PINES, together with others, committed and caused the commission of, among others, the following:

OVERT ACTS

a. On or about July 27, 2005, defendant ALISON PINES caused a fraudulent Customs entry to be submitted to CBP through the ABI.

b. On or about August 5, 2005, defendant CHRISTOPHER PEARCE caused a fraudulent Customs entry to be submitted to CBP through the ABI.

c. On or about August 25, 2005, defendant ALISON PINES caused a fraudulent Customs entry to be submitted to CBP through the ABI.

        d.  On or about October 13, 2005, defendant CHRISTOPHER PEARCE caused a fraudulent Customs entry to be submitted to CBP through the ABI.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNTS SEVEN THROUGH TEN
(Customs Fraud)

    20.  The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

    21.  On or about the dates identified below, within the Eastern District of New York and elsewhere, the defendants CHRISTOPHER PEARCE and ALISON PINES did knowingly and intentionally commit one or more willful acts and omissions, to wit: the willful submission of materially fraudulent and false Customs declarations, papers and statements, declaring duties on imported merchandise substantially lower than those that were due and owing to Customs and CBP, whereby the United States was deprived of lawful duties accruing upon merchandise referred to in such declarations, papers and statements, and affected by such acts and omissions, as set forth below:

| Count | Approximate Date of Submission | Importer | Merchandise Customs Entry Number | Customs Duties Declared in Submission and Paid | Customs Duties Due and Owing |
|---|---|---|---|---|---|
| SEVEN | Aug. 10, 2005 | Customer #2 | DK8-0506114-2 | $6,429.69 | $11,374.65 |
| EIGHT | Aug. 25, 2005 | Customer #1 | DK8-0506193-6 | $6,997.76 | $21,711.93 |
| NINE | Sept. 28, 2005 | Customer #3 | DK8-0506275-1 | $8,331.35 | $31,941.07 |
| TEN | Oct. 13, 2005 | Customer #4 | DK8-0506327-0 | $4,297.20 | $27,765.05 |

(Title 18, United States Code, Sections 542, 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FIVE

22. The United States hereby gives notice to the defendants that, upon conviction of any of the offenses charged in Counts One through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

    a. Approximately $1.6 million, for which the defendants are jointly and severally liable;

    b. The premises known and identified as 1051 Oceanfront Street, Unit 8, Long Beach, New York 11561;

      c.  The premises known and identified as 396 Club Court, Oceanside, New York 11572; and

      d.  The premises known and identified as 43 Race Track Drive, Hewitt, New Jersey 07421.

23.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS SIX THROUGH TEN

24. The United States hereby gives notice to the defendants that, upon conviction of any of the offenses charged in Counts Six through Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(B), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

    a. Approximately $1.6 million, for which the defendants are jointly and severally liable;

    b. The premises known and identified as 1051 Oceanfront Street, Unit 8, Long Beach, New York 11561;

    c. The premises known and identified as 396 Club Court, Oceanside, New York 11572; and

    d. The premises known and identified as 43 Race Track Drive, Hewitt, New Jersey 07421.

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

     c. has been placed beyond the jurisdiction of the court;

     d. has been substantially diminished in value; or

     e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Section 982(a)(2)(B); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

               A TRUE BILL

               */s/ William Wehner*
                 FOREPERSON

*/s/ Loretta E. Lynch*
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

# INFORMATION SHEET

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1. Title of Case: United States v. CHRISTOPHER PEARCE, ET AL.

2. Related Magistrate Docket Number(s): _____

   None ☒

3. Arrest Date: TO BE DETERMINED

4. Nature of Offense(s): ☒ Felony
   ☐ Misdemeanor

5. Related Civil or Criminal Cases - Title and Docket No(s). (Pursuant to Rule 50.3 of the Local E.D.N.Y. Division of Business Rules)

   None ☒

6. Projected Length of Trial: Less than 6 weeks ☒
   More than 6 weeks ☐

7. County in which crime was allegedly committed: QUEENS
   (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8. Has this indictment/information been ordered sealed? ☒ Yes ☐ No

9. Have arrest warrants been ordered? ☒ Yes ☐ No

10. Is there a capital count included in the indictment? ☐ Yes ☒ No

BENTON J. CAMPBELL
UNITED STATES ATTORNEY

By: _/s/ M. F. Stoer_
MICHAEL F. STOER
Assistant United States Attorney
(718) 254- 6452